UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Theresa Willcox,  Civil No. 06-3038 (PAM/JSM)

                Plaintiff,

v.  **MEMORANDUM AND ORDER**

Liberty Life Assurance Company
of Boston,

                Defendant.

---

This matter is before the Court on cross-Motions for Summary Judgment. For the reasons that follow, the Court grants Plaintiff's Motion and denies Defendant's Motion.

**BACKGROUND**

Plaintiff Theresa Willcox worked at Blue Cross Blue Shield of Minnesota ("Blue Cross") as a claim examiner. She was injured in an automobile accident in March 2003, and in November 2004 underwent a spine discectomy and fusion. She returned to work part-time in February 2005 and received short-term partial disability benefits from her employer for the six-month period following her surgery. The short-term benefits ended on May 22, 2005.

Blue Cross maintained long-term disability insurance coverage for its employees through Defendant Liberty Life Assurance Company of Boston ("Liberty Life"). In relevant part, the Group Disability Income Policy (the "Policy") provides:

> When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit . . . .

(Remand Admin. Record (hereinafter "R.") at 774.) As relevant to this lawsuit, a "Covered Person" is "Partially Disabled" when that person

> as a result of Injury or Sickness, is able to:
>
> * * *
>
> 2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and
>
> 3. earn between 20% and 80% of his Basic Monthly Earnings.

(Id. at 768.) There is no dispute that Plaintiff is a "Covered Person" as that is defined under the Policy. Nor is there any dispute that she was performing the duties of her occupation on a part-time basis at all relevant times.[1]

Plaintiff apparently applied for long-term partial disability benefits under the Policy, to start after Blue Cross's short-term benefits expired in May 2005. The record does not contain a copy of her initial long-term benefits application. Liberty Life ultimately determined that Plaintiff was not partially disabled and denied her claim for benefits. Plaintiff appealed this determination. Liberty Life denied her appeal and this litigation followed.

The parties cross-moved for summary judgment in April 2007. In support of her Motion, Plaintiff submitted evidence not included in the administrative record. To allow

---

[1] Throughout the record, Liberty Life consistently quotes the full-disability provisions from the Policy in discussing Plaintiff's claim. (E.g., R. at 449 (initial denial of benefits).) However, the evidence clearly shows that Plaintiff worked part-time throughout the administrative review of her claim. Neither party addresses or explains Liberty Life's failure to reference the Policy's partial-disability provisions.

Liberty Life a chance to review that evidence, the Court remanded the matter to Liberty Life but retained jurisdiction to consider the cross-Motions if Liberty Life again denied Plaintiff benefits. On September 10, 2007, Liberty Life denied Plaintiff's claim on remand. The parties then filed supplemental memoranda in support of their respective motions for summary judgment, and the matter is now ripe for resolution.

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.     Merits**

There is no dispute that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., governs the disability insurance policy issued to Blue Cross. Plaintiff does not argue that a conflict of interest or other procedural irregularity raised "serious doubts" about Liberty Life's decision, thus requiring de novo review. See, e.g., Seman v. FMC Corp. Retirement Plan, 334 F.3d 728, 733 (8th Cir. 2003) (applying de novo review where irregularities in insurer's decisionmaking raised "serious doubts about the result reached" by insurer). Therefore, there is no dispute that Liberty Life's decision in this matter is subject to review only for an abuse of discretion. Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). Under the abuse-of-discretion standard, Liberty Life's decision will stand unless it was "without reason, unsupported by substantial evidence, or erroneous as a matter of law. Donaho v. FMC Corp., 74 F.3d 894, 900 (8th Cir. 1996).

The partial disability Plaintiff alleges in this case is a radiculopathy, which is a problem with a nerve root. In Plaintiff's case, the nerve root at issue is the L5-S1 nerve root, or the nerve exiting the spinal cord at the area of the L5-S1 vertebra. According to the record, although Plaintiff's 2004 surgery relieved her back pain, she continues to experience pain radiating into her left leg, which can be a symptom of radiculopathy.

In its initial review of Plaintiff's application, Liberty Life sought the opinion of Dr. David Marks, a neurologist. After reviewing Plaintiff's medical records, Dr. Marks opined that "there is no objective evidence for a radiculopathy and no electrodiagnostic documentation for active radiculopathy." (R. at 465-66.) Throughout Dr. Marks' opinion,

he repeatedly observed that there was "no objective evidence" to support Plaintiff's claimed leg pain. (See, e.g., id. at 463.) Liberty Life adopted Dr. Marks' opinion, stating that it was denying the application because "there is no objective medical evidence to support left leg pain." (Id. at 450 (initial denial of benefits).) Similarly, in denying Plaintiff's appeal, Liberty Life quoted from Dr. Marks' opinion at length and offered no new basis for its decision to deny her application for benefits. (Id. at 410-11.) Thus, the record reflects that Liberty Life premised its denial of benefits both initially and on appeal on the ostensible lack of any objective evidence in the record to support Plaintiff's claimed leg pain.

However, as Plaintiff rather vehemently argues,[2] there was objective evidence in the record Dr. Marks reviewed that Plaintiff suffered from a radiculopathy. Indeed, Dr. Marks mentioned one examination that found much objective evidence of radiculopathy, including documented weakness in Plaintiff's left leg and decreased pinprick sensation in her left lower extremity. (Id. at 461 (Dr. Marks' opinion, citing examination of Plaintiff at The Medical Pain Clinic).) Moreover, there were several instances in the record in which Plaintiff's physicians or physical therapists noted objective symptoms of radiculopathy, such as foot drop (Id. at 571 (Oct. 7, 2005, Dr. Hentges' treatment notes)) and positive straight-leg-raising

---

[2] The Court is disturbed by the tone taken by Plaintiff's counsel in his communications with opposing counsel and in the briefing on this matter. Counsel is advised to avoid using threatening and venomous language in future communications and in future submissions to this, or any other, Court.

("SLR") tests (Id. at 634 (Nov. 9, 2004, OCPA treatment notes); id. at 627 (July 13, 2005, Courage Center physical therapy notes).).[3]

Although the abuse-of-discretion standard is deferential, it is not a rubber stamp. Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 680 (8th Cir. 2005). Liberty Life's fiduciary duty was to evaluate Plaintiff's medical records in their totality to determine whether she met the definition of partial disability in the Policy. See Govindarajan v. FMC Corp., 932 F.2d 634, 637 (7th Cir. 1991) (affirming lower court's reversal of denial of disability benefits and noting that administrator "failed to review the entire medical file in assessing [the] claim for benefits") Had Liberty Life thoroughly examined the record, it would have disagreed with Dr. Marks' opinion that the record lacked any "objective evidence" of radiculopathy because the record undisputedly contains such objective evidence. This is not to say that the record establishes conclusively that Plaintiff suffered from a radiculopathy. However, a reasonable reviewer, reading Dr. Marks' opinion, would have been skeptical of his conclusion that no objective evidence existed – not only because an independent review of the record would have revealed such evidence, but also because Dr. Marks himself noted the existence of objective evidence. Thus, it was an abuse of

---

[3] Liberty Life asserted at oral argument that evidence of positive SLR tests in July 2005 were not relevant because the disability determination is based on whether Plaintiff was disabled on May 21, 2005, the date her benefits were to begin. However, nothing in the Policy limits the administrative record to examinations before the relevant date of disability. Indeed, the Policy's definition of partial disability contains no mention of a date of disability, an effective date, or the like. Moreover, it is disingenuous to suggest, as Liberty Life did, that Plaintiff's radiculopathy might have arisen in the two months between May 21 and a Courage Center examination on July 13, 2005.

discretion for Liberty Life to rely on Dr. Marks' conclusion as the basis for its denial of Plaintiff's application for benefits.

Liberty Life could have cured its abuse of discretion by fully reviewing Plaintiff's application, as this Court ordered it to do on remand. However, once again, the record shows that Liberty Life failed to conduct such a review.

On remand, Liberty Life retained neurologist Dr. Steven McIntire. Dr. McIntire's two-page opinion does not discuss in detail any evidence, whether in the initial administrative record or in the remand record. Rather, his opinion recites the same lack of objective evidence noted by Dr. Marks, and concludes similarly: in Dr. McIntire's opinion, as of May 21, 2005, "[t]here was not evidence of an ongoing active radiculopathy." (R. at 41.) As with Dr. Marks, Dr. McIntire does not discuss or explain the record's readily apparent objective evidence that did point to a radiculopathy.

Certainly Liberty Life is entitled to, if not obliged to, seek the advice of medical professionals when evaluating a claim. However, Liberty Life is not entitled to rely blindly on that advice, especially when the opinion is not only cursory but almost devoid of any rationale.

In its Supplemental Memorandum to the Court, Liberty Life contends that Dr. McIntire relied on the absence of positive SLR tests in determining that Plaintiff was not partially disabled. According to Liberty Life, the SLR test is the definitive means to diagnose radiculopathy, and Plaintiff's negative SLR tests essentially preclude her from claiming that she suffers from radiculopathy. However, nothing in the record establishes or

even suggests that the SLR test is as determinative as Liberty Life argues. If it is, Dr. McIntire had ample opportunity to characterize it as such in the remand record, but he did not. In fact, Dr. McIntire made only a passing reference to a negative SLR test and notably did not say that Plaintiff's negative SLR test meant that she did not suffer from a radiculopathy. Liberty Life's after-the-fact attempt to bolster what is at best a cursory medical opinion cannot constitute substantial evidence to support the decision to deny Plaintiff partial disability benefits. See Marolt v. Alliant Techsys., Inc., 146 F.3d 617, 620 (8th Cir. 1998) ("We will not permit ERISA claimants . . . to be sandbagged by after-the-fact plan interpretations devised for the purposes of litigation.").

Liberty Life has failed to show that its decision to deny benefits in this case was supported by substantial evidence, and thus that decision constitutes an abuse of Liberty Life's discretion. Thus, Plaintiff is entitled to summary judgment on her claims for violations of ERISA.

**CONCLUSION**

The record establishes that Liberty Life's denial of Plaintiff's application for benefits was unsupported by substantial evidence. Therefore, that decision was an abuse of discretion and must be reversed. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Docket No. 29) is **GRANTED**; and

2. Defendant's Motion for Judgment (Docket No. 24) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>January 11, 2008</u>

                                                <u>s/ Paul A. Magnuson</u>
                                                Paul A. Magnuson
                                                United States District Court Judge